**Ex parte Rebecca MORGAN.**

**No. 07–94–0262–CV.**

Court of Appeals of Texas, Amarillo.

Oct. 18, 1994.

(b) Mutual Agreement or Specified Terms for Possession. The court shall expressly state in a standard order that the parties may have possession of the child at any and all times mutually agreed to in advance by the parties and, in the absence of mutual agreement, shall have possession of the child under the specified terms set out in the standard order.

Tex.Fam.Code Ann. § 14.033(b) (Vernon Supp.1994).

On September 2, 1993, the district court held Morgan in contempt for allegedly refusing Scherer visitation with the children. As a result of that contempt, the court sentenced her to a period of thirty (30) days confinement in the Dallam County jail. Confinement was suspended, however, provided that Morgan "comply fully and completely with all court-ordered periods of visitation in the future as previously specified."

On or about July 18, 1994, Scherer filed a motion seeking to revoke the order suspending Morgan's confinement and to enforce the visitation order. In that motion, Scherer alleged that on July 1, 1994, Morgan denied him his extended summer visitation with the children. The motion proceeded to hearing on August 11, 1994.

At the conclusion of the hearing, the trial judge orally announced his finding that Morgan was in contempt of court. As a result, the trial judge revoked the previously ordered suspension of commitment and ordered Morgan confined to the Dallam County jail for a period of thirty (30) days and "so long thereafter until [she] paid attorney fees in the amount of $688.00."

The record also contains a certified copy of the trial court's order directing the Dallam County sheriff to take custody of Morgan pursuant to its contempt finding. The document also indicated that a "Complete written Order and Commitment [would] follow." The order was dated August 11, 1994, but was not filed in the District Clerk's office until August 23, 1994. The sheriff's return on the instrument is blank.

The record also contains a certified copy of an instrument denominated "Order Revoking Suspension and for Commitment to County

Conant, Whittenburg, Whittenburg & Schachter, George Whittenburg, Karl L. Baumgardner, Amarillo, for appellant.

Moore, Lewis & Russwurm, Kyle Lewis, Dumas, for appellee.

Before REYNOLDS, C.J., and BOYD and POFF, JJ.

BOYD, Justice.

In this original habeas corpus proceeding, relator Rebecca Morgan (Morgan) seeks relief from an order of the trial court finding her in contempt and ordering her confinement in the county jail of Dallam County for a period of thirty (30) days and until she paid court costs and an attorney's fee of $688.00.

On July 13, 1992, Morgan and Robert Scherer (Scherer) were divorced in the 69th District Court of Dallam County. In the divorce decree, Morgan was awarded custody of the two minor children born to the marriage with Scherer being named as possessory conservator. Scherer was granted the standard visitation rights as provided by section 14.033 of the Texas Family Code. Subsection (b) of that section provides:

Jail" dated August 15, 1994 and filed in the District Clerk's office on August 16, 1994. In that document, the trial judge specified the order it found Morgan had violated and the manner in which it was violated. The document also ordered, as punishment for her violation, that Morgan be committed to the custody of the Dallam County sheriff for service of the punishment assessed.

In his August 15, 1994 order, the trial court detailed, as the basis for its finding that Morgan contemptuously failed to comply with visitation orders, that:

> The parties reached an agreement that Robert Lee Scherer would pick up the children for his extended summer visitation with the children on July 1, 1994, at 9:00 a.m. When Robert Lee Scherer arrived the children were not ready to leave. Their bags were not packed. Robert Lee Scherer and Rebecca Sue Morgan agreed that Robert Lee Scherer would return at noon the same day to pick up the children. When Robert Lee Scherer returned at noon the children refused to go and Rebecca Sue Morgan *did nothing to insist* that the children accompany Robert Lee Scherer for his visitation period. Robert Lee Scherer told Rebecca Sue Morgan he would return at 6:00 p.m. that same day to pick up the children for his visitation period to give Rebecca Sue Morgan an opportunity to prepare the children for visitation. When Robert Lee Scherer returned at 6:00 p.m. on July 1, 1994, to pick up the children for his summer visitation, the children were not ready, refused to go with him and Rebecca Sue Morgan *did nothing to insist* the children accompany Robert Lee Scherer for his extended summer visitation with the children. (emphasis added)

After that recitation of fact, the judge went on to conclude that Morgan had denied Scherer his summer visitation with the children "particularly when [she] left the decision of whether to attend visitation solely with the children."

This proceeding arises out of a problem too often before the courts of this state and the efforts of a conscientious trial judge to solve that problem. It demonstrates the all too common situation of continuing hostility between two divorced parents who refuse to resolve their differences and fail to recognize the inevitable effect their actions have upon their children. It is a truism that the dissolution of the marriage does not discharge a parent's responsibility to submerge his or her own personal feelings in order to fulfill the all important task of ensuring that the children of the marriage share a healthy relationship with each parent. In fact, the dissolution of the marriage not only reinforces that responsibility, but also imposes upon the parents the more difficult and onerous task to carry out the law's mandate that both parents have a proper opportunity to visit with and reinforce the love and affection of their children. Nothing in this record indicates that either parent is an improper person to aid in the upbringing of their children. It is imperative that both parents recognize that their personal feelings must be submerged in carrying out their responsibility to obey the law and, by doing so, demonstrate to their children that they should do so as well.

Even so, this proceeding must be decided upon the record before us and the law appertaining to that record. In *Ex parte Strickland*, 723 S.W.2d 668 (Tex.1987), the Texas Supreme Court held that due process in this type of case requires both a written judgment of contempt and a written order of commitment in order to punish a person. *Id.* at 669.

In *Ex parte Calvillo Amaya*, 748 S.W.2d 224 (Tex.1988), the court held that a trial court has no authority to order a person confined for contemptuous conduct committed outside the presence of the court unless the court does not "unduly delay" signing both a contempt judgment and a commitment order. *Id.* The court went on to comment that a contemnor might be detained for a "short and reasonable time" while the judgment of contempt and the order of commitment are being prepared. *Id.* at 225. However, the court held a three-day delay between the contemnor's delivery for confinement and the execution of the written judgment and commitment was not a "short and reasonable time" and, thus, violated due process requirements. *Id.* Likewise, in *McMil-*

*lian v. State,* 865 S.W.2d 459 (Tex.Crim.App. 1993), the court, citing the *Amaya* case, again held that a contempt order was void because it was not reduced to writing and signed until three days after confinement. *Id.* at 460.

■ The documents in this case show beyond cavil that the contempt judgment was not executed until August 15, 1994, some four (4) days after the hearing and oral order of commitment. Additionally, on August 12, 1994, this court granted the writ of habeas corpus and ordered Morgan released on bond. When this court granted the writ and ordered Morgan released on bond, our jurisdiction over her attached to the exclusion of any other court, including the committing court. *Ex parte Barnett,* 600 S.W.2d 252, 256–57 (Tex.1980).

■ Therefore, we must hold, under the *Amaya* and *McMillian* decisions, that the four day delay in the execution of the written contempt judgment in this case violated due process requirements, thereby voiding the judgment. Additionally, the judgment is void as it was executed at a time when this court had attained exclusive jurisdiction over Morgan. As we have noted above, a trial court has no authority to order the confinement of an alleged contemnor without both a valid written judgment and a valid written commitment order. That being true, Morgan is ordered discharged from custody and the sureties on her appearance bond are discharged from liability.

Parenthetically, we note the provision in the court's order attempting to confine Morgan in the county jail until she paid the attorney fee assessed. This court held in *Ex parte Rogers,* 633 S.W.2d 666 (Tex.App.— Amarillo 1982, no writ), that the payment of attorney's fees assessed in matters other than those involving child support delinquencies may not be enforced by contempt. *Id.* at 671.

Our above holding would ordinarily obviate the necessity for further discussion. However, both parties have asked that we discuss the question of whether a managing conservator, such as Morgan, may be held in contempt for a failure to, if necessary, bodily deliver possession of minor children to a possessory conservator, such as Scherer. Because of that request, the paucity of authority on the question, and the likelihood that the question may reoccur, we will consider the issue.

■ Under the law, and this court order, Scherer was entitled to possession of the children during specified visitation periods. Morgan would be subject to contempt proceedings if she overtly or covertly sought to impede Scherer's taking possession of the children for his visitation. However, in this case, the trial judge did not find that she acted in such a manner. Rather, his finding was that Morgan's passive conduct amounted to a denial of visitation. The evidence shows that Morgan did have the children and their baggage present at the agreed location for Scherer to take possession of them. Under this record, Morgan's passivity was not punishable by contempt.

■ We reiterate, however, that if the evidence in such a proceeding shows that a parent has encouraged minor children to resist court ordered visitation with the other parent, the line has been crossed between passivity, which is not punishable by contempt, and overt conduct, which would be punishable. Again, the well-being of the children is served by both parents' encouragement to the children to love and respect the other parent.

Reiterated, we must grant the writ. Morgan is discharged from confinement and the sureties on her bond discharged from liability.